IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA


JAMES W. MAYFIELD, et al.,            )
                                      )
              Plaintiffs,             )
                                      )
vs.                                   )        Case No. CIV-06-571W
                                      )
NATIONAL BASKETBALL                   )
ASSOCIATION, et al.,                  )
                                      )
              Defendants.             )


## DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE AND BRIEF IN SUPPORT


Graydon Dean Luthey, Jr., OBA #5568
Stephanie A. Horton, OBA #19834
HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.
320 South Boston Avenue, Suite 400
Tulsa, Oklahoma 74103-3708
918-594-0400; Fax: 918-594-0505

Howard L. Ganz (Admitted Pro Hac Vice)
Daniel R. Halem (Admitted Pro Hac Vice)
Deidre Ann Grossman (Admitted Pro Hac Vice)
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036
(212) 969-3000; Fax: (212) 969-2900

*Attorneys For Defendants National Basketball Association, New Orleans Hornets NBA Limited Partnership, NBA Properties, Inc., NBA Entertainment, Inc., And NBA Media Ventures, LLC*

Dockets.Justia.com

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 3

    The Plaintiffs ................................................................................................................. 4

    The NBA Plans ............................................................................................................. 4

    Determination to Deny Plaintiffs Continued Coverage Under the NBA Plans ..................... 6

    The Complaint ............................................................................................................... 6

ARGUMENT ........................................................................................................................ 8

PROPOSITION I       BECAUSE PLAINTIFFS LACK STANDING UNDER
                          ERISA § 502(a), THIS COURT LACKS SUBJECT MATTER
                          JURISDICTION OVER THEIR CLAIMS ....................................................... 8

PROPOSITION II      THIS COURT LACKS SUBJECT MATTER JURISDICTION
                          OVER PLAINTIFFS' STATE LAW CLAIMS ............................................ 14

PROPOSITION III    IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER
                          THIS ACTION TO THE SOUTHERN DISTRICT
                          OF NEW YORK ............................................................................................ 15

CONCLUSION ................................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Aetna Health, Inc. v. Davila,*
   542 U.S. 200 (2004).........................................................................................14

*Alexander v. Anheuser-Busch Cos.,*
   990 F.2d 536 (10th Cir. 1993) .......................................................9, 10, 12, 13

*Basso v. Utah Power & Light Co.,*
   495 F.2d 906, 909 (10th Cir. 1974) ..................................................................9

*Burch v. Champion Labs., Inc.,,*
   No. 06-CV-0135-CVE-SAJ,
   2006 U.S. Dist. LEXIS 90489 (N.D. Okla. Dec. 14, 2006)...........................4, 18

*Callery v. United States Life Ins. Co.,*
   392 F.3d 401 (10th Cir. 2004), *cert denied*, 546 U.S. 812 (2005)....................13

*Cargill Inc. v. Prudential Iins. Co. of Am.,*
   920 F. Supp. 144 (D. Colo. 1996)...............................................................17, 18

*Chrysler Credit Corp. v. Country Chrysler, Inc.,*
   928 F.2d 1509 (10th Cir. 1991) .......................................................................16

*Clement v. Pehar,*
   575 F. Supp. 436 (N.D. Ga. 1983) ..................................................................16

*Click v. Sunoco, Inc.,*
   No. 06-CV-0518-CVE-FHM, 2007 WL 593618 (N.D. Okla. Feb. 21, 2007)................3, 9

*Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.,*
   102 F.3d 712 (4th Cir. 1996) ...........................................................................13

*Felix v. Lucent Techs., Inc.,*
   387 F.3d 1146 (10th Cir. 2004), *cert. denied*, 545 U.S. 1149 (2005)............9, 13

*Firestone Tire & Rubber Co. v. Bruch,*
   489 U.S. 101 (1989)...........................................................................................9

*Fisher v. Warren,*
   No. Civ. 04-1390-W, 2005 WL 1532997 (W.D. Okla. June 29, 2005)..............13

*Geddes v. United Staffing Alliance Employee Med. Plan,*
   469 F.3d 919 (10th Cir. 2006) .....................................................................8, 12

*Gelardi v. Pertec Computer Corp.*,
    761 F.2d 1323 (9th Cir. 1985) .......................................................................7

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002)...............................................................................13

*Kelso v. Gen. Am. Life Ins. Co.*,
    967 F.2d 388 (10th Cir. 1992) ........................................................................14

*Kunz v. Colorado Ass'n of Soil Conservation Dists. Med.Benefits Plan*,
    840 F. Supp. 811 (D. Colo. 1994)...................................................................7

*Lind v. Aetna Health, Inc.*,
    466 F.3d 1195 (10th Cir. 2006) .......................................................................13

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985)...............................................................................13

*McFarland v. Yegen*,
    699 F. Supp. 10 (D.N.H. 1988)......................................................................17

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993)................................................................................8

*Miller v. Coastal Corp.*,
    978 F.2d 622 (10th Cir. 1992), *cert. denied*, 507 U.S. 987 (1993)...........................10, 14

*Miller v. Rite Aid Corp.*,
    334 F.3d 335 (3d Cir. 2003), *cert. denied*, 545 U.S. 1149 (2005)................................9, 12

*Mitchell v. Mobil Oil Corp.*,
    896 F.2d 463 (10th Cir.), *cert. denied*, 498 U.S. 898 (1990)....................................9

*Moore v. AT&T Latin Am. Corp.*,
    177 F. Supp. 2d 785 (N.D. Ill. 2001) .............................................................16

*Peckham v. Gem State Mut. of Utah*,
    964 F.2d 1043 (10th Cir.1992) ......................................................................14

*Rahwar v. Nootz*,
    No. 94-2674, 1994 WL 723040 (D.N.J. Dec. 27, 1994)...................................................18

*Sallee v. Rexnord Corp.*,
    985 F.2d 927 (7th Cir. 1993) ........................................................................12

*Seitz v. Bd. of Trs. of Pension Plan of N.Y. State Teamsters Conference Pension & Ret. Fund*,
   953 F. Supp. 100 (S.D.N.Y. 1997)...................................................................................18

*Straub v. Western Union Tel.*,
   851 F.2d 1262 (10th Cir. 1988) .....................................................................................14

*Texas Gulf Sulphur Co. v. Ritter*,
   371 F.2d 145 (10th Cir. 1967) .......................................................................................16

*Topliff v. Atlas Air, Inc.*,
   60 F. Supp. 2d 1175 (D. Kan. 1999) ..............................................................................17

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964).................................................................................................16, 18

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996)........................................................................................................13

## STATUTES

Fed. R. Civ. P. 8(a)(2) ........................................................................................................7

Fed. R. Civ. P. 12(b)(1).............................................................................................1, 3, 15

28 U.S.C. § 1404(a) ...............................................................................................1, 15, 16

29 U.S.C. § 1002(7) ...........................................................................................................9

29 U.S.C. § 1102(a)(1).....................................................................................................10

29 U.S.C. § 1102(b)(3) .....................................................................................................10

29 U.S.C. § 1132(a)(1)(B) ...........................................................7, 8, 10, 12, 13, 14

29 U.S.C. § 1132(a)(2)...................................................................................8, 12, 13

29 U.S.C. § 1132(a)(3)...................................................................................8, 12, 13

29 U.S.C. § 1132(e)(1).......................................................................................................8

29 U.S.C. § 1132(e)(2).....................................................................................................16

Defendants National Basketball Association (the "NBA"), NBA Properties, Inc., NBA Entertainment, Inc., a division of NBA Properties, Inc., and NBA Media Ventures, LLC (collectively, the "NBA Defendants"), and the New Orleans Hornets NBA Limited Partnership (the "Hornets") (together with the NBA Defendants, the "Defendants"), move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss for lack of subject matter jurisdiction the Complaint filed by Plaintiffs James W. Mayfield, Terry Durham, Edmund Middleton, Mike Mathis ("Plaintiffs"), or, in the alternative, transfer the action to the District Court for the Southern District of New York under 28 U.S.C. § 1404(a).

## PRELIMINARY STATEMENT

This is a case involving four former NBA referees who, as a result of disability, ceased working at the NBA at various times between March 1998 and December 2001.[1]  Following the dates on which they stopped working, all four of Plaintiffs thereafter received (and, with the exception of Plaintiff Middleton, who is now deceased, continue to receive) long-term disability benefits.  Further, under the terms of various health and welfare plans maintained by the NBA ("Plans") (which provided benefits to Plaintiffs during their active employment by the NBA), each of Plaintiffs was entitled to receive a maximum of twelve (12) months of additional health insurance and other benefits following their cessation of work due to disability.  However, due to an administrative error by the NBA, Plaintiffs actually received substantially more additional benefits than they were entitled to under the Plans – Plaintiffs Durham and Mathis received more than three (3) years of additional coverage, Plaintiff Middleton received more than five (5) years

---

[1]  Plaintiff Middleton died on November 5, 2006.  (Affidavit of Nancy B. Zellner ("Zellner Aff.") ¶ 4).  Accordingly, we assume that Mr. Middleton is no longer a proper plaintiff and that the complaint should be dismissed with respect to him, for reasons independent from those we advance with respect to all Plaintiffs.

of additional coverage, and Plaintiff Mayfield received six (6) years of additional coverage. When the NBA discovered this error in late 2003, it advised Plaintiffs that their health and welfare benefits would be terminated; but even then, and although Plaintiffs had enjoyed gratuitous coverage for substantially more than the maximum twelve-month period, the NBA deferred formal and final action until May 2004.

Despite their receipt of health and welfare benefits for periods of time far beyond that to which they were entitled under the clear language of the Plans, Plaintiffs now demand even more.  Although there is no dispute that Plaintiffs ceased rendering services as referees to the NBA long ago and that they received well in excess of the twelve (12) months of extended coverage the Plans afford former employees on disability, they charge that the NBA's determination to terminate their participation in the Plans as allegedly unlawful under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), as well as under state law contract and estoppel principles.  For the reasons discussed below, whether asserted under ERISA or state law, Plaintiffs' claims are not properly before this Court and should be dismissed for lack of subject matter jurisdiction.

Plaintiffs' ERISA claims must be dismissed because Plaintiffs have no standing to assert them.  Indeed, under well-established law, only individuals who have a "colorable claim" to benefits under the plan documents are deemed "participants" under ERISA with standing to challenge benefit determinations.  In determining whether a plaintiff has a "colorable claim" for benefits, the Court must confine its inquiry to the language of the relevant plan documents. Here, the plain and unambiguous language of the controlling plan documents makes clear that Plaintiffs have no entitlement to the benefits they seek.  Accordingly, Plaintiffs' ERISA claims must be dismissed for lack of standing.

2

Plaintiffs' attempt to capitalize on the NBA's administrative error to secure for themselves yet further gratuitous coverage under state law contract and estoppel principles is similarly misplaced. Such claims are preempted by ERISA and, even if treated as ERISA claims, are either: (1) duplicative of Plaintiffs' flawed benefit claim; or (2) non-actionable under settled Tenth Circuit authority rejecting estoppel as a means of varying written plan terms. Because these claims are plainly insufficient to vest Plaintiffs with standing or this Court with jurisdiction, they should be dismissed and, with them, the Complaint in its entirety.

In the alternative, if this Court determines that it does have subject matter jurisdiction over any of the claims, the Court should transfer this action to the Southern District of New York. The only connection this forum has to the case is that Plaintiff Mayfield and Plaintiffs' counsel reside here (the other three Plaintiffs reside elsewhere), but that is not an adequate reason for placing venue in Oklahoma, when it is in the Southern District of New York, where the NBA is headquartered, where Plaintiffs contend the operative facts of this case occurred and where the key documents and witnesses are located. Thus, the Court should exercise its discretion to transfer the lawsuit to the more convenient forum, which is New York.

## STATEMENT OF FACTS

This Statement of Facts is based on the facts alleged in the Complaint and documents integral and central to Plaintiffs' claims, which this Court may consider under Federal Rule of Civil Procedure 12(b)(1) without converting this motion into one for summary judgment. *See*, *e.g.*, *Click v. Sunoco, Inc.*, No. 06-CV-0518-CVE-FHM, 2007 WL 593618, at *1 (N.D. Okla. Feb. 21, 2007) (considering documents not referenced in complaint in evaluating motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of ERISA standing) (*see* Appendix). Additional facts contained in the accompanying affidavit of NBA Vice President, Benefits, Nancy B.

Zellner, may also be considered by the Court in evaluating Defendants' motion to transfer venue. *See Burch v. Champion Labs., Inc.*, No. 06-CV-0135-CVE-SAJ, 2006 U.S. Dist. LEXIS 90489, at *7 (N.D. Okla. Dec. 14, 2006).

**The Plaintiffs**

All four Plaintiffs are former referees, who were full-time employees of the NBA until they became disabled at various times between March 1998 and December 2001. (Compl. ¶¶ 10, 8; Zellner Aff. ¶ 3). With the exception of Plaintiff Middleton who died on November 5, 2006, Plaintiffs are receiving disability benefits under the NBA's long-term disability plan insured with Unum, which allows them to receive 60% of their annual pre-disability earnings. (Compl. ¶ 8; Zellner Aff. ¶ 4).[2]

**The Plans**

During their active employment as NBA referees, Plaintiffs participated in a series of welfare plans sponsored by the NBA for eligible full-time referees. These included: (1) a health plan; (2) a dental plan; (3) an accidental death and dismemberment plan; and (4) an employee assistance program providing counseling services to referees. (*See* Zellner Aff., Exhs. 4, 6, 7). According to the terms of the relevant Plans, only *active* full-time employees are eligible to participate.[3] For example, the plan document for the medical plan states that "[t]o be eligible for

---

[2] To date, each Plaintiff has received in excess of $450,000 in benefit payments, which does not include other disability income from other sources. (Zellner Aff. ¶ 4). All four Plaintiffs also applied for and received lump-sum cash-outs of their pensions (*i.e.*, $656,749.47 (Mayfield), $1,654,339 (Durham), $1,806,785 (Mathis), and $1,661,342 (Middleton)). (Zellner Aff., Exs. 1-4).

[3] ***Medical Plan***: *Certificate of Coverage* (Zellner Aff., Ex. 5) at pp. 55, 101-02 (Eligible Employees) (limiting coverage to "active full-time employees," defined to be persons receiving W-2 income for working not less than 30 hours per week); p. 55 (When Your Coverage Ends) and p. 75 (Extended Major Medical Benefits) (coverage ends when active full-time service ends, except that it is extended for one year for persons on disability); *Summary Plan Description*

*employee* coverage you must be an active *full-time employee*," and it defines an active full-time employee as an employee who regularly works at least 30 hours per week. (Zellner Aff., Ex. 5 at pp. 55, 101-102) (emphasis in original).

Moreover, the plans explicitly address the rights of employees whose active employment ends as a result of a total disability (as was the case with Plaintiffs here), providing that coverage in such circumstances will continue *only* for the first 12 months of their disability leave (at which point coverage and their employment terminates). For example, the plan document for the medical plan provides that "[i]f a *covered person's* insurance ends and he or she is totally

_____

(Zellner Aff., Ex. 7) at p. 12 (When Does Coverage End?) (providing that coverage ends when "active employment" ends); p. 62 (If You Become Totally Disabled) (providing up to one year of coverage for persons who are totally disabled and stating that employment status terminates after a year of continuous disability).

**Dental Plan:** *Certificate of Coverage* (Zellner Aff., Ex. 5) at pp. 8, 32-33 (Eligible Employees) (limiting coverage to "active full-time employees," defined to be persons receiving W-2 income for working not less than 30 hours per week); pp. 8 (When Your Coverage Ends) and p. 75 (Extended Major Medical Benefits) (coverage ends when active full-time service ends, except that it is extended for one year for persons on disability); *Summary Plan Description* (Zellner Aff., Ex. 7) at p. 28 (When Does Coverage End?) (providing that coverage ends when "active employment" ends with continuation coverage for up to 29 months for persons who select COBRA coverage and qualify as being totally disabled); p. 62 (If You Become Totally Disabled) and p. 64 (providing that dental coverage ceases as of the date referee leaves NBA subject to up to 29 months of COBRA coverage for those who select and qualify for it).

**Life Insurance Plan**: *Certificate of Coverage* (Zellner Aff., Ex. 5) at p. 48 (Eligible Employees) (limiting coverage to "active full-time employees"); p. 48 (When Your Coverage Ends) (coverage ends when active full-time service ends for any reason, including disability); *Summary Plan Description* (Zellner Aff., Ex. 7) at p. 39 (When Does Coverage End?) (providing that coverage ends when "active employment" ends).

**Accident Plan**: *Policy* (Zellner Aff., Ex. 6 at p. 1 (Persons Insured) (extending coverage to "Active Referees" of the NBA); *Summary Plan Description* (Zellner Aff., Ex. 7) at p. 63 (coverage ends after 12 months of disability).

**EAP**: *Summary Plan Description* (Zellner Aff., Ex. 7) at pp. 40, 63 (access to EAP terminates when employment terminates for any reason). The SPD also acts as the plan. (Zellner Aff. ¶ 6).

disabled," the individual is eligible to receive continued coverage for charges related to the disabling conditions for a maximum of one year. (Zellner Aff., Ex. 5 at pp. 75-76) (emphasis in original). And, indeed, the Summary Plan Description ("SPD") for all of the benefit plans states in no uncertain terms that "[i]f you are continuously disabled after 12 months, your employment with the NBA will be formally terminated." (Zellner Aff., Ex. 7 at p. 62).

**Determination to Deny Plaintiffs Continued Coverage under the Plans**

Although each Plaintiff's coverage under the Plans should have ended 12 months after the date of his disability, such coverage continued substantially beyond that period as a result of an administrative oversight, which was not discovered by the NBA until late 2003. (Zellner Aff. ¶ 7). Recognizing that Plaintiff Mayfield had received continued coverage for 6 years after he became disabled, Plaintiff Middleton for 5½ years, Plaintiff Mathis for 3½ years, and Plaintiff Durham for at least 3 years, Senior Vice President of Finance of the NBA, Robert Criqui, the plan administrator for the Plans, determined that Plaintiffs were no longer eligible to participate in the medical, life insurance, AD&D and dental plans. (Zellner Aff. ¶ 8).

Plaintiffs were notified of the error in November 2003 and were given advance notice that the coverage they had been gratuitously receiving would cease. (Zellner Aff. ¶ 9). Approximately six months later (in May 2004), Plaintiffs' coverage was discontinued. (Zellner Aff. ¶ 9).

**The Complaint**

On May 24, 2006, Plaintiffs filed a complaint in the Western District of Oklahoma, seeking to challenge the NBA's decision to discontinue their coverage under the Plans. While they admit to being permanently disabled and to receiving disability income from the NBA's long-term disability carrier (Compl.¶ 8), Plaintiffs contend that they were entitled to certain

health and other benefits that were only available when they were actively employed as referees by the NBA and that the NBA violated ERISA when it "unilaterally severed" such benefits. (Compl. ¶ 12). They further allege that the termination of these benefits was in breach of an employment contract and contrary to representations made by the NBA, "both in writing and by their [sic] acts, upon which Plaintiffs relied to their detriment." (Compl. ¶¶ 16, 17).

Although Plaintiffs have named 37 defendants in the caption of their Complaint, that Complaint purports to assert claims only against the NBA.[4] Indeed, the Complaint makes no mention at all of the other Defendants – which is hardly surprising because it is only the NBA that is alleged to have been (Compl. ¶ 8) and was (Zellner Aff. ¶ 3) Plaintiffs' employer and only the NBA that is the plan administrator of the various plans from which Plaintiffs seek benefits. (Zellner Aff., Ex. 7 at 71).[5] Accordingly, even if this Court were to conclude that it has subject matter jurisdiction with respect to the claims against the NBA, the Court should dismiss the Complaint as against these other Defendants.[6]

---

[4] We note, as well, that Plaintiffs claim to have served the summons and complaint only on the NBA Defendants and the Hornets, and not on any of the other 32 named defendants. (*See* Docket Entry Nos. 9-13).

[5] A claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), is properly asserted only against the plan as an entity, which is separate and distinct from the NBA as plan administrator. *See, e.g., Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324 (9th Cir. 1985); *Kunz v. Colorado Ass'n of Soil Conservation Dists. Med. Benefits Plan*, 840 F. Supp. 811, 812 (D. Colo. 1994) ("ERISA provisions providing for recovery against the 'plan' cannot be used to recover against the 'plan administrator' because the terms 'plan' and 'plan administrator' refer to two distinct actors[.]"). Although Plaintiffs have not properly named or served the Plans, the NBA is addressing this claim on behalf of the Plans, as Plan Administrator, while noting that it is not a proper defendant to such an action in any capacity.

[6] Even if Plaintiffs had alleged claims against these Defendants, as required under Federal Rule of Civil Procedure 8(a)(2), such claims would be dismissible in any event for reasons that go beyond Plaintiffs' lack of standing. A claim for benefits of the kind alleged by Plaintiffs under ERISA § 502(a)(1)(B) is not properly asserted against non-fiduciary third parties. *Geddes v. United Staffing Alliance Employee Med. Plan*, 469 F.3d 919, 931-32 (10th Cir. 2006).

For the reasons more fully discussed below, this Court should dismiss Plaintiffs' ERISA claims for lack of subject matter jurisdiction because, by virtue of having no "colorable claim" to benefits under the unambiguous language of the Plans, Plaintiffs do not qualify as "participants" with standing to sue under ERISA. Plaintiffs' state law claims should similarly be dismissed as a matter of law because they are preempted by ERISA and, even if treated as ERISA claims, suffer from the same lack of standing that defeats Plaintiffs' existing ERISA claims. Alternatively, if this Court determines that it does have subject matter jurisdiction over any of the claims, the Court should transfer those claims to the Southern District of New York, which is where the operative facts of this case are alleged to have occurred and, thus, also where they key witnesses and documents relevant to this action are located.

## ARGUMENT

## PROPOSITION I

### BECAUSE PLAINTIFFS LACK STANDING UNDER ERISA § 502(a), THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THEIR CLAIMS.

Section 502(e)(1) of ERISA expressly invests federal courts with jurisdiction over ERISA actions only if such actions are commenced by those parties enumerated in Section 502, namely: (1) the Secretary of Labor; (2) participants; (3) beneficiaries; and (4) fiduciaries. 29 U.S.C. § 1132(e)(1). Because of the specific language of Section 502(e)(1), status as one of the parties enumerated in Section 502 is "both a standing and a subject matter jurisdictional

---

Furthermore, none of the Defendants other than the NBA is alleged to have had any function or involvement with respect to any plan's administration or the decision to terminate Plaintiffs' coverage and, consequently, they would be improper parties to actions under both ERISA § 502(a)(2) (authorizing actions against fiduciaries) and Section 502(a)(3) (authorizing actions for "appropriate equitable relief" to remedy ERISA violations; *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 253 (1993) (noting that Section 502(a)(3) does not authorize actions for "appropriate equitable relief *at large*" but rather is limited to redressing ERISA violations) (emphasis in original)).

requirement." *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1160 (10th Cir. 2004) (quotation

omitted) (*citing Miller v. Rite Aid Corp.*, 334 F.3d 335, 340 (3d Cir. 2003)) *cert. denied*, 545

U.S. 1149 (2005); *see also Mitchell v. Mobil Oil Corp.*, 896 F.2d 463, 473 (10th Cir.) ("Th[e]

limitation on the group of potential claimants [under ERISA] is necessary . . . to prevent the

imposition of 'great costs on pension plans for no legislative purpose.'"), *cert. denied*, 498 U.S.

898 (1990).  Consequently, because a motion to dismiss for lack of ERISA standing goes to the

subject matter jurisdiction of a court to hear a plaintiff's claim, it is to be treated as a motion to

dismiss under Federal Rule of Civil Procedure 12(b)(1).  *See*, *e.g.*, *Click*, 2007 WL 593618, at *1

(*citing Basso v. Utah Power & Light Co*., 495 F.2d 906, 909 (10th Cir. 1974)).

In the instant case, Plaintiffs purport to bring suit as "participants" of ERISA plans.

ERISA Section 3(7) defines "participant" as "any employee or former employee of an employer .

. . who is or may become eligible to receive a benefit of any type from an employee benefit

plan."  ERISA § 3(7), 29 U.S.C. § 1002(7).  According to the Supreme Court's decision in

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), former employees such as Plaintiffs

here will be deemed "participants" under ERISA if they "have . . . a reasonable expectation of

returning to covered employment" or if they can establish that they have "a colorable claim to

vested benefits."  *Id.* at 117.  Where, as here, a plaintiff does not seek reinstatement to

employment as part of a lawsuit, standing is wholly dependent on the plaintiff to establish a

"colorable claim to vested benefits."  *See*, *e.g.*, *Alexander v. Anheuser-Busch Cos., Inc*., 990 F.2d

536, 539 (10th Cir. 1993); *Mitchell*, 896 F.2d at 474.  The requirement that plaintiff establish a

"colorable claim" requires the court to consider the merits of the claim at a preliminary stage of

the proceedings.  *See*, *e.g.*, *Alexander*, 990 F.2d at 539 (considering merits of ERISA claim for

benefits in connection with *sua sponte* determination of whether district court had subject matter jurisdiction).

Moreover, in determining whether Plaintiffs have a "colorable claim" for benefits under the applicable plans, the Court should confine its inquiry to the language of the plans, and should not consider any extrinsic evidence that Plaintiffs may proffer. ERISA, through its statutory provisions, affords primacy to the written plan document and requires that benefit determinations be made based solely on such written terms. *See* 29 U.S.C. § 1102(a)(1) ("Every employee benefit plan shall be established and maintained pursuant to a written instrument."); 29 U.S.C. § 1102(b)(3) (requiring that plan amendments be in writing and follow procedures contained in plan); 29 U.S.C. § 1132(a)(1)(B) (providing cause of action to participant to "recover benefits . . . under the terms of his plan"). For this reason, the Tenth Circuit has consistently rejected attempts by plaintiffs to demonstrate an entitlement to benefits on the basis of extrinsic evidence inconsistent with the language of the plan. *See Alexander*, 990 F.2d at 538-39 (rejecting plaintiff's attempt to establish ERISA standing based on employer's written assurances that coverage existed where such assurances contradicted terms of applicable plan); *Miller v. Coastal Corp.*, 978 F.2d 622, 625 (10th Cir. 1992) (rejecting plaintiff's attempt to predicate ERISA § 502(a)(1)(B) claim for pension benefits on erroneous written benefit statements that miscalculated plaintiff's years of credited service where statements were inconsistent with plan terms, emphasizing that ERISA disallows informal plan amendments), *cert. denied*, 507 U.S. 987 (1993).

Here, Plaintiffs lack standing to sue under ERISA because the unambiguous terms of the Plans – on their face – do not provide them with any colorable entitlement to continue their benefits indefinitely after they became permanently disabled and ceased performing any services

for the NBA.  As discussed earlier, the plan document for both the medical plan and dental plan limits coverage to "active full-time employees," a category that is defined to include only those individuals who work for at least 30 hours per week.  (Zellner Aff., Ex. 5, at pp. 8, 55, 32-33, 101-02).  Similarly, the Life Insurance Plan provides that: "Your coverage ends on the date your active *full-time* service ends for any reason.  Such reasons include disability, death, retirement, layoff, leave of absence and the end of employment."  (Zellner Aff., Ex. 5, at pp. 48).

Thus, there can be no dispute that, under the plain language of the official plan documents, Plaintiffs' active full-time employment with the NBA ceased when their disabilities prevented them from rendering any services for the NBA.  Additionally, although the Plans extend coverage to individuals on disability for the first 12 months of their leave, Plaintiffs have already received the full extent of that coverage and much more.  Indeed, by May 18, 2004, when Plaintiffs' coverage under the Plans was discontinued, Plaintiffs had received from 3 to more than 6 additional years of gratuitous coverage for themselves and their dependants as a result of an administrative oversight (which does not even include the COBRA rights Plaintiffs were afforded in May 2004).

While the Plans unambiguously provide for the termination of benefits after 12 months of an individual's disability, they contain absolutely *no* language that even arguably suggests that Plaintiffs were entitled to benefits indefinitely (or for some period of time longer than 12 months) after the commencement of their disability leave.  Indeed, despite very specific language regarding the rights of totally disabled participants (including an entire section in the SPD titled "If You Become Totally Disabled"), Plaintiffs can point to no language in the Plans that colorably entitled them to continued coverage for a period longer than that for which they received benefits.  To the contrary, the SPD could not be more clear:  While benefits are

11

continued for a 12-month period after a referee becomes inactive by reason of disability, if the referee is continuously disabled after 12 months, his "employment with the NBA will be formally terminated."  (Zellner Aff., Ex. 7, p. 62).

In sum, where as here, a plaintiff's claim for benefits is patently unsupported by the terms of the controlling plan documents, courts in the Tenth and other Circuits have not hesitated to find no "colorable claim" and dismiss such claims for lack of standing.  *See*, *e.g.*, *Alexander*, 990 F.2d at 538 (dismissing for lack of standing plaintiff's claim for long term disability benefits where plan excluded disabilities based on a pre-existing condition and plaintiff's disability admittedly resulted from condition existent as of effective date of coverage); *Miller v. Rite Aid Corp.*, 334 F.3d 335, 340 (3d Cir. 2003) (finding no ERISA standing to assert claim for severance benefits where plaintiff admittedly resigned and plan only provided coverage to persons who were laid off); *Sallee v. Rexnord Corp.*, 985 F.2d 927, 928 (7th Cir. 1993) (affirming district court's *sua sponte* dismissal of ERISA action for lack of standing at preliminary stage of proceedings where plaintiff, who had resigned, had no "colorable claim" to severance benefits under plan extending benefits to employees "terminated by the Company").[7]

Plaintiffs' attempt to establish a colorable claim for the benefits in question based on ERISA §§ 502(a)(2) or 502(a)(3) is similarly unavailing.  ERISA § 502(a)(2) affords participants an action against a plan fiduciary for "*any losses to the plan* resulting from each such breach …"

---

[7]  Notably, even if Plaintiffs were able to establish that they had a colorable claim, and thus participant standing to pursue their claim under ERISA § 502(a)(1)(B) (which they do not), they would still have to establish that the NBA's determination that they no longer met the Plans' eligibility criteria was arbitrary and capricious - that is "without any reasonable basis."  *Geddes*, 469 F.3d at 929.  Because the Plans do not, on their face, provide Plaintiffs the benefits they seek, there is no need for the Court to reach this question.  Should it become necessary, however, the NBA is prepared to defend the reasonableness of its determination at a subsequent stage of these proceedings.

(emphasis added), and is thus wholly unavailable to obtain individual benefit coverage.  *See*

*Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140-43 (1985) (finding that Section 502(a)(2)

provides remedies to protect the plan, not the rights of individual participants); *Fisher v. Warren*,

No. Civ. 04-1390-W, 2005 WL 1532997, at *3 (W.D. Okla. June 29, 2005) (West, J.)

(recognizing that Section 502(a)(2) "precludes individualized relief").  Similarly, Section

502(a)(3) is inapplicable because that provision authorizes a civil action only for the purpose of

obtaining "appropriate equitable relief."  29 U.S.C. § 1132(a)(3).  The relief being sought here

under Section 502(a)(3) is not "appropriate" because Plaintiffs are relying on Section 502(a)(3)

as an alternative basis for recovery of the same benefits they seek under Section 502(a)(1)(B).

Under *Varity Corp. v. Howe*, 516 U.S. 489 (1996), this is an avenue foreclosed to Plaintiffs even

if they cannot succeed on their Section 502(a)(1)(B) claim.  *See Felix v. Lucent Techs., Inc.*, 387

F.3d 1146, 1163 n.16 (10th Cir. 2004) (*citing Coyne & Delany Co. v. Blue Cross & Blue Shield

of Va., Inc.*, 102 F.3d 712, 716 (4th Cir. 1996)).[8]

---

[8]  Insofar as Plaintiffs may instead be seeking to recover from the NBA the *value* of benefits they
are unable to obtain from the Plans, they are seeking relief that is not available under Section
502(a)(3).  The Tenth Circuit has "firmly closed the door" on the recovery of such extra-
contractual money damages under ERISA § 502(a)(3).  *Callery v. United States Life Ins. Co.*,
392 F.3d 401, 409 (10th Cir. 2004) (quotation omitted), *cert denied*, 546 U.S. 812 (2005).; *see
also Alexander*, 990 F.2d at 539 (holding that, where plaintiff lacked the right to benefits under
plan terms, any relief sought constituted extra-contractual money damages, which are
unavailable under ERISA § 502(a)(3)).  As the Supreme Court made clear in *Great-West Life &
Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), "appropriate equitable relief" is
narrowly construed to mean "restitution . . . where the money or property [being sought by the
participant] can be 'traced to particular funds or property in the defendant's possession.'"
*Callery*, 392 F.3d at 407-08 (quoting *Great-West*, 534 U.S. at 213)); *see also Lind v. Aetna
Health, Inc.*, 466 F.3d 1195, 1200 (10th Cir. 2006) (reiterating limited scope of relief available
under Section 502(a)(3) post-*Great West*).

## PROPOSITION II

## THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS

Plaintiffs' state law claims for breach of contract and estoppel add nothing to their position. Both such claims seek benefits under the Plans and thus fall squarely within ERISA's broad preemptive sweep. *See*, *e.g.*, *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004) (holding that "[a]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted"); *Kelso v. Gen. Am. Life Ins. Co.*, 967 F.2d 388, 390 (10th Cir. 1992) (finding breach of contract claim that related to employee benefit plan preempted); *Peckham v. Gem State Mut. of Utah,* 964 F.2d 1043, 1051 (10th Cir. 1992) (finding preempted claims for benefits based on theory of promissory estoppel and estoppel by conduct).

Moreover, even if treated as claims arising under ERISA's civil enforcement provisions, Plaintiffs' contract and estoppel claims fail for lack of standing for the same reasons as Plaintiffs' asserted ERISA claims. Plaintiffs' breach of contract claim – properly characterized as a breach of the terms of the Plans under ERISA § 502(a)(1)(B) – fails because, as explained above, Plaintiffs have no colorable claim to the benefits they seek and, consequently, could have suffered no breach of those terms. Plaintiffs' estoppel claim fails because, as noted above (*supra* at 9-10), the Tenth Circuit has expressly declined to recognize such a cause of action under ERISA where, as here, it is being advanced for the purpose of enlarging the terms of a written plan and seeking benefits where none are owing. *See*, *e.g.*, *Miller*, 978 F.2d at 625 ("We have already decided that an estoppel claim is not available under ERISA.") (*citing Straub v. Western Union Tel. Co.*, 851 F.2d 1262, 1266 (10th Cir. 1988)).

14

In sum, regardless of which statutory provision Plaintiffs cite or legal theory they purport to advance, the terms of the Plans simply do not afford Plaintiffs any basis to obtain the additional benefits they seek, let alone the "colorable claim" to such benefits necessary to afford them standing as "participants" under ERISA. Because they lack standing, Plaintiffs' claims must be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

## PROPOSITION III

### IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS ACTION TO THE SOUTHERN DISTRICT OF NEW YORK

In the alternative, in the event that this Court determines that it has jurisdiction over any of Plaintiffs' claims, it should exercise its broad discretion and transfer this action to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1404(a), because Oklahoma has no factual connection to this lawsuit and because it is at NBA headquarters in New York – rather than Oklahoma – where the key material witnesses and documents are located.

For "the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In exercising their broad authority to transfer actions to more appropriate fora, courts balance various private and public interests. The private interests may include: (1) plaintiff's choice of forum; (2) whether the claim arose elsewhere; (3) the ease of access to sources of proof; and (4) the location of documentary evidence. The public interests may include: (1) enforceability of the judgment; (2) relative court congestion of the two fora; (3) familiarity of the trial judge with the applicable state law; (4) local interest in deciding local

controversies at home; and (5) practical considerations that could make the trial easy, expeditious and inexpensive. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (*citing Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).  In considering and balancing these factors, a court must keep in mind the primary goal of Section 1404(a): "to prevent the waste of 'time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation omitted).  Here, the balance of these factors clearly favors transferring this action to the Southern District of New York.[9]

Although Plaintiffs chose to bring this action in Oklahoma, their choice of forum is entitled to little deference for two reasons.  First, only Plaintiff Mayfield resides in Oklahoma; the other three Plaintiffs reside in Ohio, California, and Oregon, respectively.  (Compl. ¶¶ 4-7). The deference given to plaintiffs' choice of forum is thus greatly diminished.  *See, e.g.*, *Moore v. AT&T Latin Am. Corp.*, 177 F. Supp. 2d 785, 789 (N.D. Ill. 2001) (granting defendant's motion to transfer venue where only one of two plaintiffs resided in forum state); *Clement v. Pehar*, 575 F. Supp. 436, 445 (N.D. Ga. 1983) (granting defendant's motion to transfer where four of five plaintiffs resided outside the forum state and noting that "[i]t appears that this action was instituted in this Court solely for the convenience of the one resident plaintiff whose law firm is representing all the plaintiffs.").[10]

---

[9]  There is no question that the action might have been brought in the Southern District of New York in the first place because, under ERISA, venue lies "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2).  New York is where the NBA, which is the Plan Administrator, is headquartered.  (Zellner Aff., Ex. 7 at 71).

[10]  Because the other three Plaintiffs are alleged to reside in Ohio, Oregon and California (Compl. ¶¶ 5-7), any "direct affect" the determination of this lawsuit may have in Oklahoma is no greater than the affect it will have in any of these three other states, or any other state in which a former

Second, none of the operative facts on which Plaintiffs' claims are based are alleged to have occurred in Oklahoma.  Plaintiffs allege in their Complaint that:  (1) they were, before they became disabled, referees employed by the NBA, headquartered in New York (Compl. ¶¶ 8, 10); (2) as NBA referees, they were entitled to benefits under the Plans (Compl. ¶ 11); (3) the NBA made representations to them regarding their coverage on which they relied (Compl. ¶ 16); and (4) the NBA unlawfully terminated their benefits under these plans.  (Compl. ¶ 12).  This Court need not look beyond Plaintiffs' own allegations to recognize that their claims must have arisen (if at all) in New York, not in Oklahoma.  Indeed, this is not surprising, since the NBA has no offices in Oklahoma and, indeed, an NBA team has been based in Oklahoma only since late 2005 (when the Hornets transferred there after Hurricane Katrina) (Zellner Aff. ¶ 12) – after all the events relevant to this dispute occurred and certainly long after Plaintiffs ceased refereeing games for the NBA.  Under such circumstances, Plaintiffs' choice of forum is insufficient for this Court to retain this lawsuit in Oklahoma.  *See*, *e.g.*, *Cargill*, 920 F. Supp. at 147 ("little deference is accorded a plaintiff's choice of forum where plaintiff has chosen a district . . . which has no factual connection to the lawsuit"); *Topliff v. Atlas Air, Inc.,* 60 F. Supp. 2d 1175, 1179-80 (D. Kan. 1999) (granting defendant's motion to transfer employment lawsuit where employee resided in forum state but performed services for employer at locations outside of forum state and employer's principle place of business was located outside of forum state); *McFarland v. Yegen*, 699 F. Supp. 10, 15-16 (D.N.H. 1988) (transferring venue to state where decisions

―――――――――――――――――――

referee on disability may reside.  *See Cargill Inc. v. Prudential Ins. Co. of Am.,* 920 F. Supp. 144, 147-48 (D. Colo. 1996) (in action by employer/fiduciary against third party administrator for improperly processing benefits, plaintiff's choice of forum was entitled to little deference where majority of participants affected by improper processing resided outside forum state).  Thus Oklahoma has little "public" interest in adjudicating this claim.

regarding plan and alleged breach occurred, and stating that plaintiffs' choice of forum "is accorded less weight when, as in the instant case, 'the operative facts of [the] case have no material connection with this district'") (alteration in original) (internal quotation omitted).

Where, as here, the operative facts occurred outside of a plaintiff's chosen forum, courts have regularly transferred venue to the forum where most of the witnesses and documentary evidence is located, noting the primary goal of Section 1404(a): "to prevent the waste of 'time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation omitted). *See also Cargill*, 920 F. Supp. at 147-48 (granting defendant's motion for change of venue in ERISA action to district where witnesses and documents were located); *Burch v. Champion Labs., Inc.*, No. 06-CV-0135-CVE-SAJ, 2006 U.S. Dist. LEXIS 90489, at *7 (N.D. Okla. Dec. 14, 2006) (although plaintiff worked in Oklahoma, court transferred action to Illinois where most witnesses and documents with information relevant to claims were located); *Seitz v. Bd. of Trs. of Pension Plan of N.Y. State Teamsters Conference Pension & Ret. Fund*, 953 F. Supp. 100, 103 (S.D.N.Y. 1997) (transfer to where witnesses and documents relevant to plan administration were located); *Rahwar v. Nootz*, No. 94-2674, 1994 WL 723040, at *2 (D.N.J. Dec. 27, 1994) (transferring action from District of New Jersey to Southern District of New York because, *inter alia,* "'the ease of access to sources of proof' will be better achieved in Southern District of New York"). Here, the determination to deny Plaintiffs' continued coverage under the Plans was made by Mr. Robert Criqui, who is indisputably based at the NBA's headquarters in New York, and it is at those headquarters where all documents relating to the erroneous extension of coverage and how it was discovered and rectified are located. (Zellner Aff. ¶¶ 10, 11).

In short, when this Court balances the interests of the parties, it should conclude that these interests strongly favor transferring this action to the Southern District of New York. The inconvenience and additional expense inherent in forcing the NBA to bring its witnesses and documents to Oklahoma clearly outweighs any inconvenience that might result from requiring Plaintiffs to pursue their claims in the Southern District of New York.

## **CONCLUSION**

For the reasons stated herein, Defendants request that this Court: (1) dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction, or, in the alternative, if the Court concludes that it has subject matter jurisdiction over any of the claims; (2) transfer the action to the Southern District of New York as the more convenient forum.

Respectfully submitted,

_s/Graydon Dean Luthey, Jr.,_____
Graydon Dean Luthey, Jr., OBA #5568
Stephanie A. Horton, OBA #19834
HALL, ESTILL, HARDWICK, GABLE,
  GOLDEN & NELSON, P.C.
320 South Boston Avenue, Suite 400
Tulsa, Oklahoma 74103-3708
Telephone: (918) 594-0400
Facsimile: (918) 594-0505
dluthey@hallestill.com
shorton@hallestill.com

Howard L. Ganz (Admitted Pro Hac Vice)
Daniel R. Halem (Admitted Pro Hac Vice)
Deidre A. Grossman (Admitted Pro Hac Vice)
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

*Attorneys For Defendants National Basketball Association, New Orleans Hornets NBA Limited Partnership, NBA Properties, Inc., NBA Entertainment, Inc., and NBA Media Ventures, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2007, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk will transmit a Notice of Electronic Filing to the following ECF registrants:

David W. Little
Law Offices of David Little
115 E. California Street
Suite 350
Oklahoma City, OK 73104
davidwlittle@msn.com


_____s/Stephanie A. Horton_____

20