AGREEMENT made this ___ day of February, 2000, by and between the National Basketball Association ("NBA") and the National Basketball Referees Association ("NBRA"):

## Article I
## Union Recognition, Union Security,
## Dues Check-Off; Coverage of Agreement; Years of Service

**Section 1.    Union Recognition.**

The NBA recognizes the NBRA as the exclusive collective bargaining representative of all persons employed by the NBA as referees in the United States and Canada, and the NBRA warrants that it is duly empowered to enter into this Agreement for and on behalf of such employees.

**Section 2.    Union Security.**

Except where prohibited by law, all persons employed by the NBA as referees in the United States and Canada as of the date of execution of this Agreement shall become members of the NBRA within forty-five (45) days after such date, or if already members, shall remain such as a condition of continued employment. Except where prohibited by law, all persons hired by the NBA to work as referees in the United States and Canada after the date of execution of this Agreement shall, as a condition of continued employment, become members of the NBRA within forty-five (45) days after their date(s) of hire.

**Section 3.    Dues Check-Off.**

During the period covered by this Agreement, and except where prohibited by law, the NBA agrees to check-off, from the salary of each referee who is a member of the NBRA and who has so authorized the NBA in writing, the regular dues, charges and initiation fees as assessed against such referee by the NBRA, and to remit such dues to the NBRA at the times and in the manner specified in the referee's written authorization.

Dockets.Justia.com

**Section 4. Coverage of Agreement.**

This Agreement shall govern the terms and conditions of employment of all persons employed by the NBA as referees in the United States and Canada. Except as otherwise specifically set forth, the terms and provisions of this Agreement shall apply only with respect to persons employed by the NBA to work as referees in the United States and Canada.

**Section 5. Years of Service.**

For purposes of this Agreement, "Years of Service" means the number of years of NBA service credited to a referee in accordance with the following: annexed hereto as Exhibit A is a list of persons currently employed as referees by the NBA and their Years of Service as of the conclusion of the 1998-99 season; each season of service after the 1998-99 season for which a referee was or is assigned to work in the NBA and such referee officiated or officiates at least one (1) NBA regular season game shall count as one (1) Year of Service. A year of service will be credited to a referee on the June 30th following the season with respect to which it is being credited. Under no circumstances shall the definition of Years of Service herein be used for purposes of determining a referee's "Years of Referee Service" under the Restated National Basketball Association Referees' Pension Plan.

2

(the "Expense Adjustment'), will be included in the next expense allowance payment(s) to such referee, including playoff expense allowance payment(s) (if applicable); provided, however, that in the event that an expense allowance is not payable to the referee until the subsequent season (or, if following the 2003-04 season, there are no further expense allowance payments to be made to the referee) the Expense Adjustment will be made on the next subsequent payroll check(s) (including for the Playoff Pool) payable to the referee.

**Section 3.    Playoff Payout.**

Referees assigned by the NBA to officiate any Playoff game(s) shall be provided with the applicable expense allowance set forth above for each Travel Day to which the referee is assigned during such Playoffs. Such amount shall be paid to the referee upon submission of valid hotel receipts to the NBA.

**Section 4.    Compliance with Regulations.**

All expense allowance payments made by the NBA under this Agreement shall be subject to all applicable regulations (including but not limited to Internal Revenue Service regulations) regarding expense payments made to employees. It is the intention of the parties that the NBA will continue to use the IRS "high-low" substantiation method with respect to expense allowance payments.

**Article VI    Pension and Other Benefits**

**Section 1.    Pension Plan.**

The Restated National Basketball Association Referees' Pension Plan (a defined benefit plan attached as Exhibit B) (the "Pension Plan") shall remain in effect through the term of this Agreement. A referee will receive an annual normal retirement benefit equal to the following amounts multiplied by the referee's total number of "Years of Referee Service" (as such term is defined by Section 1.34 of the Restated National Basketball Association Referees' Pension Plan):

        1999-00        $3,631

|         |         |
|---------|---------|
| 2000-01 | $3,822  |
| 2001-02 | $4,032  |
| 2002-03 | $4,262  |
| 2003-04 | $4,516  |

**Section 2.    Life Insurance.**

During the period covered by this Agreement, the NBA shall pay the premiums for life insurance coverage for persons employed by the NBA as referees to provide maximum (non-cumulative) benefits (in accordance with the terms of the applicable policy or policies) as follows:

Basic Coverage:    $ 500,000

Accidental Death:    $1,000,000

Common Carrier:    $1,500,000

**Section 3.    Disability Insurance.**

To the extent the NBA can continue to purchase such policy, and subject to the provisions of this Section 3, the NBA shall provide disability benefits to persons employed by the NBA as referees in accordance with the terms of the summary description attached as Exhibit C, provided that each referee to be covered by such policy complies with and satisfies all preconditions and procedures (concerning, inter alia, evidence of insurability) to and for such coverage as may be required by the insurance carrier; and provided further that: (i) with respect to the 2000-01 season, such premiums do not exceed by more than 10% the premiums paid by the NBA for disability insurance for referees with respect to the 1999-00 season, and (ii) with respect to each successive season covered by this Agreement that follows the 2000-01 season, the premiums for such season do not exceed by more than 10% the premiums paid by the NBA for disability insurance for referees with respect to the immediately preceding season. If the premiums for the disability insurance exceed the limitations set by this Section 3 in any season, the NBA (after consultation with the NBRA) shall

18

make changes in the benefits provided so that such premium limitations are not exceeded.

### Section 4.  Medical and Dental.

During the term of this Agreement, the NBA shall provide group medical and dental insurance coverage for those persons employed by the NBA as referees in accordance with the summary descriptions attached as Exhibit D, provided that: (i) with respect to the 2000-01 season, such premiums do not exceed by more than 10% the premiums paid by the NBA for medical and dental insurance for referees with respect to the 1999-2000 season, and (ii) with respect to each successive season covered by this Agreement that follows the 2000-01 season, the premiums for such season do not exceed by more than 10% the premiums paid by the NBA for medical and dental insurance for referees with respect to the immediately preceding season. If the premiums for the medical and dental coverage exceed the limitations set by this Section 4 in any season, the NBA (after consultation with the NBRA) shall make changes in the benefits provided so that such premium limitations are not exceeded.

### Section 5.  Post-Retirement Benefits.

(a) When a referee with at least ten (10) Years of Service voluntarily resigns or retires from employment with the NBA, the NBA will maintain such referee, until age 65, on the NBA group medical insurance plan and such referee will reimburse the NBA for 50% of the annual premium for such plan. The NBA will also maintain, at the referee's option, until age 65, such referee in its group term life insurance plan for the life insurance coverage provided for in Section 2 above, and such referee will reimburse the NBA for 100% of the amount paid for such life insurance coverage.

(b) Notwithstanding the foregoing, when a referee with at least twenty (20) Years of Service voluntarily resigns or retires from employment with the NBA beyond the age of 54, the NBA will maintain such referee, until age 65, on the NBA group medical plan (i) for the first five (5) years following his retirement (but in no event

beyond age 65) at no cost to the referee, and (ii) for the next five (5) years (but in no event beyond age 65) and such referee will reimburse the NBA for 25% of the annual premium for such plan. The NBA will also maintain such referee in its group term life insurance plan for the life insurance coverage provided in Section 2 above for the first two years following his retirement (but in no event beyond age 65) at no cost to the referee. Thereafter, the NBA will maintain such referee in its group term life insurance plan for $50,000 of "basic" term coverage at no cost to the referee (but in no event beyond age 65).

Section 6.    Severance.

(a)    A referee with ten (10) or more Years of Service who voluntarily resigns or retires from employment with the NBA, or who is terminated pursuant to Article IX, Sections 4(b) or 5 (collectively, "Retirement"), shall receive the amount set forth below for each Year of Service:

| Retirement Date | Amount |
| --- | --- |
| September 1, 1999 - August 31, 2000: | $12,000 |
| September 1, 2000 - August 31, 2001: | $12,500 |
| September 1, 2001 - August 31, 2002: | $13,000 |
| September 1, 2002 - August 31, 2003: | $13,500 |
| September 1, 2003 - August 31, 2004: | $14,000 |

Such amounts shall be payable in fifty-two (52) equal bi-weekly installments, commencing within thirty (30) days of such referee's Retirement. Under no circumstances shall a referee be entitled to both payments hereunder and payments pursuant to Article VI, Section 6(b), or Article IX, Section 6. A referee entitled to a

20

benefit hereunder shall have the option, exercisable by notice in writing to the NBA within thirty (30) days of the referee's Retirement, and provided that no payments pursuant to this Section have been made to such referee, to elect to have the NBA provide the referee with a life annuity that can be purchased with an amount equal to the amount that would otherwise be payable pursuant to this Section. The purchase of an annuity to be made by the NBA hereunder shall be made in consultation with the referee and will be made at the time the last payment is due and is in lieu of any other benefit or payment under this Section.

(b) Notwithstanding anything to the contrary provided in this Agreement, any referee who (i) is currently age 55 or older, or will reach age 55 during the term of this Agreement, and (ii) voluntarily resigns or retires from employment with the NBA prior to July 15, 2004, shall receive, in lieu of payments provided for under Article VI, Section 6(a), for each of the two seasons subsequent to such resignation or retirement: the salary the referee would have received under the salary scale set forth in Article III, Section 1 had he or she not resigned or retired, less the starting referee salary for each such season. Such payments shall be made in accordance with the payment schedule set forth in Article III, Section 2. In addition, any such referee will also receive life and medical insurance benefits described in Article VI, Section 5(b) (for a referee with twenty (20) or more Years of Service).

(c) To be eligible for the benefits described in Section 6(b), a referee must notify the NBA in writing of his or her decision to resign or retire after the conclusion of a season, but not later than the July 15 preceding the first season for which he or she intends to resign or retire. Any referee who voluntarily resigns or retires pursuant to Section 6(b) above may not subsequently request reinstatement.

(d) The Commissioner may, in his absolute and sole discretion, provide for severance payments on an individual basis to referees upon or following the

Howard Pearl - 3b05!.WPD  Page 22
Case 5:06-cv-00571-W   Document 36-3   Filed 07/13/2007   Page 8 of 17

termination of their employment with the NBA in addition to those set forth above. Nothing contained herein, expressed or implied, shall be construed as imposing any standards of reasonableness upon the Commissioner with respect to his determination whether or not to provide any severance payments and/or the amounts thereof.

   (e) (i) No benefits or severance shall be paid by the NBA to a referee who has been terminated or has resigned unless and until such referee and the NBRA have executed a release in the form annexed as Exhibit E.

     (ii) No benefits or severance shall be paid by the NBA to a referee who has at any time received disability benefit payments under the disability insurance policy provided pursuant to Section 3 of Article VI, unless, subsequent to the date on which the referee receives the last disability benefit payment under such disability policy, such referee is credited with at least two "Years of Referee Service" as such term is defined under Section 1.34 of the Restated National Basketball Association Referees' Pension Plan.

**Section 7. Salary Continuation for Injuries.**

   If, during the term of this Agreement, a referee suffers an injury in the course of employment that results in the referee being unfit to officiate any scheduled assignment, then, so long as such unfitness continues, but in no event beyond the term of one (1) year from the date of such injury, the referee shall continue to be entitled to receive such annual salary as provided for by Article III, Section 1 at the rate applicable at the time of such injury. The NBA's obligations hereunder shall be reduced by any workers' compensation benefits and insurance provided for by the NBA and paid or payable to the referee. As a condition to an injured referee receiving salary pursuant to this provision, such referee shall agree, in writing, (a) to assign workers' compensation benefits and insurance proceeds, relating to the injury suffered, to the NBA during the period of such injury, and (b) if necessary to effectuate such assignment, to receive the applicable salary for such one (1) year period at the rate of twenty-six (26) equal bi-

weekly installments instead of at the rate of fifteen (15) equal bi-weekly installments. Each referee, now or hereafter employed, and the NBRA hereby release the NBA and its members (and all officers and employees of the NBA and any NBA member) and waive every claim the referee or the NBRA may have against the NBA (and all such members, officers and employees) for damages and for all claims and demands whatsoever arising out of or in connection with any such injuries. No referee shall be entitled to payments pursuant to this Section resulting in more than one (1) year's annual salary (at the rate(s) applicable) for the same injury (including recurrences) in any five (5) year period. As used in this section, "injury" shall mean a physical illness, condition or injury suffered or sustained by a referee affecting all or a portion of the referee's body such that the referee is unfit to officiate and shall include any recurring problem(s) which may result in the aggravation, continuation and/or repetition of the same illness, condition or injury, without regard to the number of occurrences that may cause such illness, condition or injury.

### Article IX    Evaluation and Termination

**Section 1.    Definitions.**

Referees with three (3) or fewer Years of Service shall be regarded as "probationary" referees, and referees with more than three (3) Years of Service shall be regarded as "veteran" referees.

**Section 2.    Evaluations.**

(a)    Each referee who has worked in excess of twenty-five (25) regular season games in any season will be evaluated at the end of such season. The evaluation shall be based on the referee's regular season performance, and shall consist of a composite rating based upon the evaluations made by NBA coaches (which shall count for 25% of the composite rating), general managers (15%), observer-scouts (10%), the NBA Executive Vice President, Basketball Operations (30%), and the NBA Director of Officiating (or equivalent) (20%). Following the conclusion of each season covered by this Agreement, all referees shall be ranked on the basis of the composite ratings compiled for such season, with those referees whose ratings place them in the top 25% ranked in Group I, those whose ratings place them in the next 45% ranked in Group II, and those whose ratings place them in the bottom 30% ranked in Group III. The ratings shall be tabulated by a nationally recognized accounting firm designated by the NBA (after consultation with the General Counsel of the NBRA), and within five (5) days after the ratings for a season have been compiled and tabulated, but in no event later than July 1, the NBRA shall be furnished with the overall composite rating for each referee and separate composite ratings based upon the evaluations made by NBA coaches (as a group), general managers (as a group), observer-scouts (as a group), the NBA Executive Vice President, Basketball Operations, and the NBA Director of Officiating (or equivalent). All ratings shall be submitted to the Commissioner.

(b)    Upon request, any referee shall have the right to review and copy, at reasonable times, all observer-scout reports regarding such referee which are in his

file at the League Office. The NBA shall advise all referees of the foregoing, in writing, during the Training Camp prior to the start of each season hereunder.

Section 3.    Termination of Probationary Referees.

(a)    If, following the conclusion of any season covered by this Agreement, a probationary referee, based upon the composite ratings referred to in Section 2 above, ranks in Group III, such referee may, in the NBA's absolute and sole discretion, be terminated from employment with the NBA; and such termination shall be deemed to be for just cause under any applicable statute, regulation or rule of law. In such event, the referee shall have the right to an informal review of the termination by the Commissioner or his designee. The determination made by the Commissioner or his designee shall be final and binding and neither the NBRA nor such referee shall have any right to a review of such termination, or any right to advance any claim of any kind whatsoever in connection therewith, before any person or body (including, but not limited to, any court, administrative agency, or arbitrator of any kind).

(b)    In addition, the employment of a probationary referee may be terminated at any time for good cause (other than such referee's ranking in Group III) or, following the conclusion of any season covered by this Agreement, without cause, and in either of such events the referee shall (except as provided for by Section 6 of this Article IX and/or by Section 3 of Article X) have the right to an informal review of the termination by the Commissioner or his designee. The determination by the Commissioner or his designee shall be final and binding, and neither the NBRA nor the referee involved shall have any right to a review of such determination, or any right to advance any claim of any kind whatsoever in connection therewith, before any person or body (including, but not limited to, any court, administrative agency, or arbitrator of any kind).

Section 4.    Termination of Veteran Referees.

(a)    If, following the conclusion of any season, a veteran referee with

35

less than ten (10) Years of Service ranks in Group III based upon the composite rating referred to in Section 2 above, such referee may, in the NBA's absolute and sole discretion, be terminated from employment by the NBA; and such termination shall be deemed to be for just cause under any applicable statute, regulation or rule of law.

(b)    If a veteran referee with ten (10) Years of Service or more ranks, at the season's conclusion, in Group III based upon the composite rating referred to in Section 2 above, twice during any three successive seasons in which he or she is assigned to officiate NBA games, such referee may, in the NBA's absolute and sole discretion, be terminated from employment by the NBA; and such termination shall be deemed to be for just cause under any applicable statute, regulation or rule of law.

(c)    In the event a veteran referee is terminated from employment pursuant to Sections 4(a) or 4(b) above, the referee shall have the right to an informal review of the termination by the Commissioner or his designee. The determination by the Commissioner or his designee shall be final and binding, and neither the NBRA nor the referees involved shall have any right to a review of such determination, or any right to advance any claim of any kind whatsoever in connection therewith, before any person or body (including, but not limited to, any court, administrative agency, or arbitrator of any kind).

(d)    In addition, the employment of a veteran referee may be terminated at any time for good cause (other than such referee's ranking in Group III) and in such event the referee shall (except as provided for by Section 6 of this Article IX and/or by Section 3 of Article X) have the right to a review (on the basis set forth below) of that determination by an arbitrator selected by the parties from an American Arbitration Association list of prominent professional arbitrators, with each party alternately striking names from such list until only one remains. Any arbitration proceeding shall be conducted in New York City and in accordance with the Voluntary Labor Arbitration

Rules of the American Arbitration Association. All costs of arbitration, including the fees and expenses of the arbitrator, shall be borne equally by the NBA and the NBRA; but each party shall bear the cost of its own counsel and the like. In the event that the arbitrator concludes that good cause did not exist for the termination of the referee, the referee shall be awarded one year's salary from the date of termination at the rate applicable at the time of such termination (payable in fifty-two (52) equal bi-weekly installments). No award of the arbitrator and nothing herein contained shall be construed to require the NBA to reinstate the terminated referee.

(e) The NBA shall be entitled to terminate a veteran referee at any time for good cause; provided, however, that if following the conclusion of any season, the NBA decides to terminate a referee based on such referee's performance for the preceding season(s), it shall notify the referee in writing within 30 days after the last game of the NBA Finals for that season; and provided further that such notification shall be deemed given once it is sent via certified or overnight mail to the referee, with a copy to the General Counsel of the NBRA.

**Section 5. Referee Review.**

(a) If, at the conclusion of any season covered by this Agreement, a referee (probationary or veteran) in Group I or Group II, based upon the composite ratings referred to in Section 2 above, has fallen eight (8) or more positions in such rankings (by comparison with those of the previous season) the NBA shall have the right to place the referee on "review" for a period of one (1) season. The determination to place such referee on review shall be in the sole and absolute discretion of the NBA, and nothing contained herein, expressed or implied, shall be construed as imposing any standard of reasonableness upon the NBA with respect to such determination. Further, neither the NBRA nor the referee involved shall have any right to a review of such determination, or any right to advance any claim of any kind whatsoever in connection therewith, before any person or body (including, but not limited to, the

Commissioner, his designee, any court, administrative agency, or arbitrator of any kind).

(b)     If a referee who has been placed on review has not, at the conclusion of the review period, moved up by four (4) or more positions over the ranking of the previous season, such referee may, in the NBA's absolute and sole discretion, be terminated from employment with the NBA; and such termination shall be deemed to be for just cause under any applicable statute, regulation or rule of law. The referee shall have the right to an informal review of the termination by the Commissioner or his designee. The determination by the Commissioner or his designee shall be final and binding, and neither the NBRA nor the referee involved shall have any right to a review of such determination, or any right to advance any claim of any kind whatsoever in connection therewith, before any person or body (including, but not limited to, any court, administrative agency, or arbitrator of any kind).

Section 6.    Termination Without Cause.

(a)     In addition to and notwithstanding the foregoing provisions of this Article IX, the NBA shall have the right at any time to terminate the employment of any referee, whether or not the specific provisions regarding termination as set forth above in this Article IX may be applicable to such referee. The referee shall have the right to an informal review of the termination by the Commissioner or his designee. The determination by the Commissioner or his designee shall be final and binding, and neither the NBRA nor the referee involved shall have any right to a review of such determination, or any right to advance any claim of any kind whatsoever in connection therewith, before any person or body (including, but not limited to, any court, administrative agency, or arbitrator of any kind).

(b)     In the event of a termination pursuant to Section 6(a) above, the referee shall receive one year's salary at the rate applicable at the time of such termination (payable in fifty-two (52) equal bi-weekly installments); and such payment

shall be in lieu of any other payment to which the referee may be entitled on account of such termination under any applicable statute, regulation or rule of law. Such payment shall commence upon either (i) notice from the referee that he will not seek review of the termination, or (ii) a final determination by the Commissioner or his designee upholding the termination, as the case may be; provided, however, that no such payment will be made unless and until such referee and the NBRA have executed a release in the form annexed hereto as Exhibit F. In the event the referee is reinstated, such referee shall continue to receive the applicable salary under Article III, Section 1 and will receive no additional payments under this provision.

Section 7.  NBRA Representation.

In any review provided for under this Article IX, the referee may be represented by the NBRA.

### Article XIV   Integration; Governing Law; Miscellaneous

(a) This Agreement constitutes the entire understanding between the parties, shall govern their entire relationship, and shall be the sole source of any and all rights or claims which may be asserted in arbitration hereunder or otherwise. All understandings, conversations and communications, as well as all prior agreements and practices (except as specifically set forth herein), oral or written, expressed or implied, between the NBA and the NBRA and/or any representative of either, are merged into and superseded by this Agreement and shall be of no force or effect. This Agreement may not be modified, altered, or amended, except by a writing signed by both parties.

(b) This Agreement is made under and shall be governed by the internal law of the State of New York, except where United States federal law may govern.

(c) In the event the NBA does not take an action otherwise required by this Agreement on the ground that such action would violate any state, provincial or local law, it will notify the General Counsel of the NBRA in writing.

(d) The headings and organization of this Agreement are solely for the convenience of the parties, and shall not be deemed part of, or considered in construing or interpreting, this Agreement.

(e) All of the Exhibits hereto are an integral part of this Agreement and of the agreement of the parties thereto.

## Article XV    Term of Agreement

This Agreement shall be effective from November 1, 1999 and shall continue in full force and effect until September 1, 2004.

| NATIONAL BASKETBALL ASSOCIATION | NATIONAL BASKETBALL REFEREES ASSOCIATION |
|---|---|
| By: | By: |
| Joel M. Litvin<br>Executive Vice President<br>Legal and Business Affairs | Howard M. Pearl<br>General Counsel |
| | By: |
| | Member, Executive Board |
| | By: |
| | Member, Executive Board |
| | By: |
| | Member, Executive Board |
| | By: |
| | Member, Executive Board |
| | By: |
| | Member, Executive Board |