IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES W. MAYFIELD, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. CIV-06-571W |
| ) | |
| NATIONAL BASKETBALL ) | |
| ASSOCIATION, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE AND BRIEF IN SUPPORT**

Graydon Dean Luthey, Jr., OBA #5568
Stephanie A. Horton, OBA #19834
HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.
320 South Boston Avenue, Suite 400
Tulsa, Oklahoma 74103-3708
(918) 594-0400; Fax: (918) 594-0505

Howard L. Ganz (Admitted Pro Hac Vice)
Daniel R. Halem (Admitted Pro Hac Vice)
Deidre A. Grossman (Admitted Pro Hac Vice)
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036
(212) 969-3000; Fax: (212) 969-2900

*Attorneys For Defendants National Basketball Association, New Orleans Hornets NBA Limited Partnership, NBA Properties, Inc., NBA Entertainment, Inc., And NBA Media Ventures, LLC*

## PRELIMINARY STATEMENT

It is undisputed that Plaintiffs long ago ceased to be NBA employees and that they received benefits far beyond those to which they were entitled under the clear language of the relevant Plan documents. Faced with these undeniable facts, Plaintiffs now seek to amend their Complaint to allege for the first time that they are "retirees" of the NBA with a colorable claim to retiree medical and life insurance benefits – not under the terms of the Plans, but rather under the terms of a collective bargaining agreement ("CBA") between the NBA and the National Basketball Referees Association ("NBRA"). Further, although Plaintiffs did not even refer to the CBA in their Complaint, they now apparently base their ERISA claim for benefits primarily on provisions of the CBA, while also seeking to assert a claim for breach of the CBA pursuant to Section 301 of the Labor Management Relations Act ("Section 301").[1]

Plaintiffs' new theory is without merit. The CBA expressly incorporates the Plans by reference, making clear that the terms of the Plans govern any entitlement to benefits. Moreover, the provisions of the CBA are entirely consistent with those of the Plan documents, leaving no doubt or ambiguity that referees who cease work as a result of

---

[1] Plaintiffs have not responded to – and thus have conceded – the arguments raised by Defendants in their initial brief that: (1) any and all state law claims are preempted by ERISA; (2) there is no basis for any claim against any Defendant other than the NBA and the Plan; and (3) Plaintiffs have no standing to pursue claims under ERISA § 502(a)(2) on behalf of the Plan. They have also failed to explain how the relief they seek constitutes "appropriate equitable relief" permitting them to advance a claim under ERISA § 502(a)(3) after the Supreme Court's decision in *Great-West Life & Annuity Ins. v. Knudson*, 534 U.S. 204 (2002). Thus, irrespective of how the Court rules on Plaintiffs' ERISA § 502(a)(1)(B) claim asserted against the NBA and the Plan, and Plaintiffs' request to amend the Complaint to state a Section 301 claim, it should dismiss all other claims and defendants from the action.

disability (and who, unlike "retirees," receive disability benefit payments) are entitled only to health and welfare benefits for a <u>maximum</u> of twelve (12) months following their cessation of work. Accordingly, the Complaint should be dismissed with prejudice.

In the event the Court permits Plaintiffs to proceed with their claims, venue should be transferred to the Southern District of New York. Plaintiffs do not dispute that the witnesses and documents relevant to their claims are located in New York. The sole fact that Plaintiffs have chosen this forum because one Plaintiff resides here is an insufficient basis to deny Defendants' motion to transfer when all parties agree that virtually all the witnesses and all documents are located in New York.

## PROPOSITION I
## PLAINTIFFS ARE NOT ENTITLED TO THE BENEFITS THEY SEEK UNDER THE TERMS OF THE COLLECTIVE BARGAINING AGREEMENT

There can be no serious dispute that the relevant Plan documents do not provide Plaintiffs with the "colorable claim" for benefits necessary to establish ERISA standing – because those documents make clear that Plaintiffs were only entitled to benefits for a maximum of twelve (12) months following their cessation of employment as a result of disability.[2] Rather, Plaintiffs contend that the CBA is part of the Plan, and that "Plaintiffs

---

[2] While apparently recognizing that they have no entitlement to further benefits under the plain language of the Summary Plan Description ("SPD"), Plaintiffs contend that the "insurance policies and SPD are inconsistent with each other" because the insurance policy provides that coverage ends "on the date your active full time service ends for any reason, other than disability" and "no deadline is specified if service ends because of disability." Pl. Br. at 17. In advancing this argument, however, Plaintiffs omit from their brief an entire section of the insurance policy (titled "Extended Major Medical Benefits") that provides for an additional year of coverage for individuals whose insurance ends as a result of disability. Zellner Aff., Ex. 5, pp. 75-76. This is entirely consistent with the SPD, which provides for continued coverage for 12 months after active employment ends. See Zellner Aff., Ex. 7, p. 62.

2

have, at least, a colorable claim of entitlement to benefits under the CBA." Pl. Br. at 15. Plaintiffs then rely on the same CBA provisions as the basis for their purported breach of contract claim under Section 301.

Plaintiffs' revised theory of the case is that, when they ceased work as a result of disability, they became entitled to certain medical and life insurance benefits afforded to "retirees" under the CBA. Pl. Br. at 7-9. However, Plaintiffs' reliance on the CBA cannot revive their ERISA claims because the CBA is entirely consistent with the Plan documents both in distinguishing between referees who cease work due to disability and non-disabled referees who "retire", and with respect to the termination of benefits for referees who cease work due to disability.

As an initial matter, Plaintiffs assert that "[t]here certainly was no hint [in the CBA] that the insurance policy was dictating the terms and conditions of employment and the benefits being derived therefrom," and thus contend that the insurance policies and SPD do not govern their claim for benefits. Pl. Br. at 16. Plaintiffs' premise is flatly incorrect. The summary of medical benefits set forth as Exhibit D to the CBA explicitly provided:

> This is intended only as a general summary of benefits. A more complete description of benefits and the terms under which they are provided, including limitations and exclusions, are contained in the Group Certificate Booklet PPO94NY. See Halem Decl., Ex. 1.[3]

---

[3] With respect to life insurance benefits, the CBA provided that "[d]uring the period covered by this Agreement, the NBA shall pay the premiums for life insurance coverage for persons employed by the NBA as referees to provide maximum (non-cumulative) benefits *(in accordance with the terms of the applicable policy or policies)*. . ." Gibson Aff., Ex. 2, Article VI, Section 2, p. 18 (emphasis added). Thus, the life insurance provision of the CBA also made clear that the terms of the insurance policy govern.

3

Plaintiffs presumably omitted this provision from their brief because it so clearly refutes their newfound claim, and makes clear that, under the CBA, the <u>insurance policy</u> sets forth the medical "benefits and the terms under which they are provided."[4]

Furthermore, contrary to Plaintiffs' contention, the provisions of the CBA are entirely consistent with the language of the Plan documents regarding the rights of disabled referees. Indeed, Article VI, Section 6(e) of the 1999 CBA, which was the CBA in effect when the NBA terminated Plaintiffs' benefits, expressly provided that:

> No benefits or severance shall be paid by the NBA to a referee who has at any time received disability benefit payments under the disability insurance policy provided pursuant to Section 3 of Article VI, unless, subsequent to the date on which the referee receives the last disability benefit payment under such disability policy, such referee is credited with at least two "Years of Referee Service" as such term is defined under Section 1.34 of the Restated National Basketball Association Referee's Pension Plan. Gibson Aff., Ex. 2, p. 8.

Thus, like the Plan documents, the CBA clearly provides that disabled referees who do not return to work following their disability are not entitled to the medical and life insurance benefits provided under the CBA to non-disabled referees who retire.

Plainly recognizing that Article VI, Section 6(e) of the CBA is inconsistent with their revised theory of the case, Plaintiffs assert that this provision "was not presented during bargaining with the NBRA, was not in any NBA proposals, was not discussed with the NBRA, and was slipped in purely when the CBA was being compiled by the

---

[4] Plaintiffs' contention that the CBA, rather than the Plan documents, governs their entitlement to benefits cannot be squared with the fact that the CBA does not set forth any of the details regarding the terms of their alleged coverage, including, for example, the level of benefits, exclusions from coverage, claims procedures, and termination of coverage, among other things.

4

NBA without the consent, knowledge, or ratification of the NBRA." Pl. Br. at 9, n.1. Plaintiffs' bald assertions are entirely without foundation and must be disregarded.

As an initial matter, Plaintiffs, who were not involved in the negotiations between the NBA and the NBRA, have not proffered – by affidavit or otherwise – a shred of support for their absurd claim that Section 6(e) was inserted into a CBA that was signed by the NBRA without the knowledge of the NBRA – a contention that the NBRA itself has never asserted. Plaintiffs' assertion appears only in their opposition brief (indeed, confined to a footnote); and it is well-established that a party cannot defeat a Rule 12(b) motion by relying on unsupported conjecture or surmise. *See Abu-Fakher v. Bode*, 175 F. App'x 179, 191 (10th Cir. 2006).

It also is well-established that when a CBA provision is clear and unambiguous, a court should apply the provision without resort to extrinsic evidence. *See, e.g., Volkman v. United Transport. Union*, 73 F.3d 1047, 1050 (10th Cir. 1996); *Bozetarnik v. Mahland*, 195 F.3d 77, 83 (2d Cir. 1999) (Pl. Br. at 13). Here, Plaintiffs do not contend that Article VI, Section 6(e) is ambiguous, thus the Court should construe that provision in accordance with its plain and ordinary meaning (*i.e.*, that referees who received disability payments are not entitled to the other benefits provided for in Article VI).

In addition, Plaintiffs' contention that they are entitled under the CBA to the benefits afforded to non-disabled retirees requires a nonsensical construction of the CBA and Plan document provisions – provisions which even Plaintiffs concede should be interpreted in harmony. See Pl. Br. at 17 ("the rest of the CBA terms must be considered

5

in light of the SPD terms"); *Bozetarnik*, 195 F.3d at 81 (Pl. Br. at 13) (construing labor contract and plan together).

As reflected in the Plan documents, the NBA and the NBRA agreed that individuals who cease work due to disability would receive <u>different</u> benefits than individuals who retire for reasons unrelated to disability. For example, the SPD contains a section titled "If You Retire," which sets forth the welfare benefits retirees receive, and a separate section titled "If You Become Totally Disabled," which specifies in great detail the particular benefits provided to referees – like Plaintiffs – who cease work because of disability. Zellner Aff., Ex. 7 at pp. 58, 62.[5] Under Plaintiffs' theory, the provisions in the SPD and insurance policies that describe the benefits provided to disabled referees are simply a nullity that do not apply to anyone. That is not, and cannot be, the proper interpretation of the governing documents. Rather, the only sensible construction that gives effect to all provisions of the CBA and Plan documents in a consistent manner is that referees who cease work due to disability, unlike non-disabled referees who retire, do not receive benefits for a period in excess of twelve (12) months following the cessation of their employment (as clearly set forth in the Plan documents).[6]

---

[5] Disabled referees who cease work as a result of disability, unlike retirees, may be entitled to a full year of salary continuation, followed by an additional ten (10) years of disability benefits at 60% of their pre-disability salary until age 65. Zellner Aff., Ex. 7, pp. 29-37. Each of the Plaintiffs has received disability benefits in excess of $450,000. Zellner Aff., ¶ 4.

[6] The parties' agreement to terminate medical coverage for disabled referees after 12 months yet allow certain retirees to continue their medical coverage (subject to a cost-sharing arrangement) to age 65 is consistent with the fact that individuals who cannot work due to a total disability, unlike retirees, qualify for medical benefits under Medicare prior to age 65.

Accordingly, because Plaintiffs have not demonstrated a "colorable claim" for the benefits they seek, their ERISA claims must be dismissed for lack of standing.[7] Similarly, because Plaintiffs have no claim for the benefits they seek under the express language of the CBA, they should not be permitted to amend their Complaint to assert a Section 301 claim.

## PROPOSITION II
## PLAINTIFFS' REQUEST FOR DISCOVERY UNDER RULE 56(F) SHOULD BE DENIED AS IMPROPER AND UNWARRANTED

Plaintiffs' attempt to avoid dismissal of their claims by contending that they require discovery regarding the negotiation of the CBA and the practice under the Plans should be denied for three independent reasons.

First, by definition, Rule 56(f) discovery is available only to a party opposing a Rule 56 summary judgment motion, and there is nothing in the Rule to suggest that such a request can be properly made in opposition to a Rule 12(b) motion based on the complaint and documents referenced therein. See Fed. R. Civ. P. 56(f).[8]

---

[7] Plaintiffs' assertion that their equitable estoppel claim should survive dismissal because "the Tenth Circuit has not expressly rejected the doctrine . . . as to ERISA welfare plans" is wrong. The Tenth Circuit has flatly rejected the estoppel doctrine in the context of a claim for life insurance benefits, which are welfare plan benefits. *See, e.g., Callery v. United States Life Ins. Co.*, 392 F.3d 401, 407-08 (10th Cir. 2004), *cert. denied*, 546 U.S. 812 (2005). Thus, Plaintiffs' equitable estoppel claims must be dismissed as a matter of law.

[8] Although Plaintiffs contend that Defendants' motion is one for summary judgment, they are incorrect. The motion is based on the Complaint and documents referenced therein, which this Court may consider without converting the motion into one for summary judgment. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381 (10th Cir. 1997). Moreover, Plaintiffs ignore well-established precedent from this jurisdiction holding that a court can consider facts beyond the complaint in evaluating a motion to dismiss on ERISA standing grounds without converting the motion into one for summary judgment. *See Click v. Sunoco, Inc.*, No. 06-CV-0518-CVE-FHM, 2007 WL 593618, at *1 (N.D. Okla. Feb. 21, 2007).

Second, even if Defendants had moved for summary judgment, Rule 56(f) requires an opposing party requesting discovery to file an affidavit explaining, among other things: (i) what facts are sought and how they are to be obtained; and (ii) how those facts are reasonably expected to create a genuine issue of material fact. *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 905 (10th Cir. 1995); *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 926 (2d Cir. 1985). Here, the affidavit Plaintiffs have filed does not meet this standard and this, by itself, is enough to reject their claim that the opportunity for discovery was inadequate. *See, e.g., Bldg. & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487 (10th Cir. 1993).

Third, even if the Court considered Plaintiffs' request for discovery on the merits, the request should be denied because the discovery is not relevant to the Court's disposition of Defendants' motion. Where, as here, the terms of the governing documents are clear and unambiguous, a court will not consider the types of extrinsic evidence that Plaintiffs seek to adduce in discovery in determining a plaintiff's entitlement to benefits. *See Volkman*, 73 F.3d at 1050.

### PROPOSITION III
### NEW YORK IS A MORE CONVENIENT FORUM THAN OKLAHOMA

In the event the Court does not dismiss the Complaint, it should, for the reasons more fully set forth in Defendants' opening brief, transfer venue to the Southern District of New York, where the NBA is headquartered and where all relevant decisions were made. Def. Br. at 15-19. In their opposition, Plaintiffs not only fail to provide any legitimate reasons as to why the action should not be transferred, but, to the contrary,

8

provide further support for such transfer by conceding that they will seek substantial discovery of witnesses and documents located in New York.

Plaintiffs' primary argument against transfer is that "significant weight is given to a plaintiff's choice of forum." Pl. Br. at 23. However, "a plaintiff's choice of forum is 'neither dispositive of the transfer analysis nor is it the only factor to be considered.'" *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 480 (D.N.J. 1993) (quotation omitted). Where, as here, only one Plaintiff resides in the forum state, and all of the operative facts arose outside of the state, a plaintiff's choice of forum is given little deference. See Def. Br. at 16; *Cargill Inc. v. Prudential Ins. Co. of Am.*, 920 F. Supp. 144, 147 (D. Colo. 1996). Indeed, courts have routinely found a plaintiff's choice of forum to be outweighed by the remaining private and public interest factors where residence is the only asserted nexus to the chosen forum.[9]

With respect to the convenience of witnesses, and the relative ease of the access of sources of proof, Plaintiffs, while conceding that the witnesses and documents are located in New York, argue that "[d]efendant's brief mentions only one witness, Mr. Robert Criqui" and that Mr. Criqui will not "suffer more than a minor inconvenience." Pl. Br. at 25. However, in the very next section of their brief, Plaintiffs claim that they are entitled to substantial discovery on such subjects as the administration and practices of the benefit

---

[9] See *Waeltz v. Delta Pilots Ret. Plan*, 301 F.3d 804, 810-11 (7th Cir. 2002) (transferring venue of ERISA claim for benefits to Atlanta where the Plan was administered there); *Seitz v. Bd. of Trs. of Pension Plan of N.Y. State Teamsters Conference Pension & Ret. Fund*, 953 F. Supp. 100, 103 (S.D.N.Y. 1997) (transferring action from plaintiff's home jurisdiction to New York, where plan and witnesses and documents were located); *McFarland v. Yegen*, 699 F. Supp. 10, 15-16 (D.N.H. 1988) (transferring case brought in New Hampshire by New Hampshire residents to New Jersey, where witnesses and documents were located).

9

plans over a ten year period, "the parties' bargaining proposals and negotiations notes," and the "parties' statements at the negotiating table;" and they go on to assert that this evidence "is in the exclusive control of Defendants . . . located at its NY offices." Pl. Br. at 28. Although Defendants dispute Plaintiffs' entitlement to this discovery for the reasons explained earlier, the discovery they demand would – on its face – obviously involve numerous current and former employees of the NBA in addition to Mr. Criqui, and substantial documentation potentially covering a 10-year period, all located in New York. In addition, Plaintiffs seek discovery from current (and former) NBRA officials, who are not parties to the action, who regularly conduct (or conducted) business with the NBA in New York, including collective bargaining negotiations.

The facts that the relevant Plans are administered in New York, the relevant CBAs were negotiated in New York, virtually all the potential witnesses are located in New York, all of the documents are located in New York, and all the operative facts took place in New York, far outweigh the singular fact that one of the Plaintiffs resides in Oklahoma. Accordingly, the Court should exercise its discretion and transfer the action to the Southern District of New York.

## CONCLUSION

For the reasons stated herein, and in Defendants' initial brief, this Court should (1) dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction and deny Plaintiffs' motion to amend; or, in the alternative, (2) if the Court concludes that it has subject matter jurisdiction over any of the claims, transfer the action to the Southern District of New York.

Respectfully submitted,

s/Daniel R. Halem
Howard L. Ganz (Admitted Pro Hac Vice)
Daniel R. Halem (Admitted Pro Hac Vice)
Deidre A. Grossman (Admitted Pro Hac Vice)
PROSKAUER ROSE LLP
1585 Broadway
New York, NY  10036
Telephone: (212) 969-3003
Facsimile: (212) 969-2900

Graydon Dean Luthey, Jr., OBA #5568
Stephanie A. Horton, OBA #19834
HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.
320 South Boston Avenue, Suite 400
Tulsa, Oklahoma 74103-3708
Telephone:  (918) 594-0400
Facsimile:  (918) 594-0505

11