IN THE UNITED STATES DISTRICT COURT FOR **FILED**

THE WESTERN DISTRICT OF OKLAHOMA    OCT  3 2007

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY _W. N._ DEPUTY

JAMES W. MAYFIELD et al.,                )
                                         )
            Plaintiffs,                  )
                                         )
vs.                                      )        No. CIV-06-571-W
                                         )
NATIONAL BASKETBALL                      )
ASSOCIATION et al.,                      )
                                         )
            Defendants.                  )

## ORDER

This matter comes before the Court on the Motion to Dismiss or, in the
Alternative, to Transfer Venue filed by defendants National Basketball Association,
NBA Properties, Inc., NBA Entertainment, Inc., a division of NBA Properties, Inc.,
and NBA Media Ventures, LLC (collectively "NBA"), and defendant New Orleans
Hornets NBA Limited Partnership ("Hornets") pursuant to Rule 12(b)(1), F.R.Civ.P.,

Mayfield et al v. National Basketball Association et al

and title 28, section 1404(a) of the United States Code.  Plaintiffs James W.

Doc. 41

Mayfield, Terry Durham and Mike Mathis[1] have responded to the motion, and the
NBA and the Hornets have filed a reply.  Based upon the record, the Court makes
its determination.

The plaintiffs were employed full-time by the NBA as referees until they
became disabled at various times between March 1998 and December 2001.[2]  The

---

[1]Plaintiff Edmund Middleton died on November 5, 2006.

[2]The parties have agreed that Mayfield's employment terminated on March 2, 1998,
that Middleton's employment terminated on January 15, 1999, that Mathis's employment
terminated on December 18, 2001, and that Durham's employment terminated on
December 24, 2001.

plaintiffs have received and, with the exception of Middleton, have continued to receive long-term disability benefits under the NBA Referees' Pension Plan, a long-term disability plan issued by UNUM Life Insurance Company of America ("Unum"),

While the plaintiffs were employed by the NBA, the NBA maintained and sponsored the National Basketball Association Referees Insurance Plan, which included a medical plan, a dental plan and a life insurance plan issued by The Guardian and an accidental death and dismemberment plan issued by The Chubb Group of Insurance Companies. The summary plan descriptions of these plans as well as an employee assistance plan (collectively "NBA plans") were summarized in a document entitled "A Guide to Benefits for NBA Referees" ("Benefits Guide"), and as active full-time employees, the plaintiffs participated in these NBA plans.

Due to an alleged administrative error that was discovered in November 2003, the NBA, based on its opinion that each plaintiff was only entitled to receive a maximum of twelve (12) months of benefits under the NBA plans after his period of employment ended, determined that the plaintiffs had received substantially more benefits to which they were entitled. It terminated the plaintiffs' coverage under the NBA plans in May 2004, and it calculated that Durham and Mathis had received more than three (3) years of additional coverage, that Middleton had received more than five (4) years of additional coverage and that Mayfield had received more than six (6) years of additional coverage.

On May 24, 2006, the plaintiffs commenced this action against the NBA and inter alia, The Guardian and Unum. The plaintiffs also named as defendants the

2

Hornets, twenty-nine (29) other professional basketball teams, Dental Guard Preferred and "All the Past, Current and Future Owners, Affiliates, Subsidiaries, Welfare and Retirement Plans, Directors, Officers, Employees, Agents, Partners and Shareholders of Any of the Foregoing."[3]

The plaintiffs have challenged the NBA's decision to discontinue their benefits under the NBA plans, and in their complaint, they have contended that they are entitled to relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq., and in particular, sections 1132(a)(1)(b), 1132(a)(2) and 1132(a)(3). The plaintiffs have also advanced claims entitled breach of contract, promissory estoppel and detrimental reliance.[4]

The NBA and Hornets have first contended that dismissal of the plaintiffs' ERISA claims is warranted because the plaintiffs lack standing to assert such claims. Section 502(e)(1), 29 U.S.C. § 1132(e)(1), expressly grants jurisdiction to

_____

[3]In their complaint, the plaintiffs only asserted claims against the NBA, which despite its challenge to the plaintiffs' claims, has contended that it is not a proper party to this action.

The plaintiffs do not refer to or mention any other defendant in their complaint, and there are no allegations that the Hornets or any other basketball team was involved with the dispute concerning the NBA plans at issue in this case.

[4]The complaint is silent as to whether the basis of these claims is state law or federal law. To the extent, if any, the plaintiffs have relied upon state law, the Court finds such claims are preempted by ERISA, e.g., Aetna Health, Inc. v. Davila, 542 U.S. 200, 209 (2004)(ERISA preempts state law causes of action that duplicate, supplement or supplant any ERISA civil enforcement remedy), and should be dismissed.

To the extent these claims seek relief under federal law, they likewise fail and should be dismissed. As set forth herein, the plaintiffs' breach of contract claim fails because the plaintiffs are not entitled to the benefits they have sought, and the estoppel and detrimental reliance claims fail because these claims are unavailable under ERISA. E.g., Callery v. United States Life Insurance Company, 392 F.3d 401 (10th Cir. 2004); Miller v. Coastal Corp., 978 F.2d 622 (10th Cir. 1992).

3

this Court over ERISA actions if such actions are commenced by plan participants.[5] The status of a plaintiff as a plan participant "is 'both a standing and a subject matter jurisdictional requirement.'" Felix v. Lucent Technologies, Inc., 387 F.3d 1146, 1160 n.14 (10th Cir. 2004)(quoting Stanton v. Gulf Oil Corp., 792 F.2d 432, 434 (4th Cir. 1986)(other citation omitted)). Because the NBA and the Hornets have challenged the plaintiffs' status as "plan participants" and because such challenge calls into question the Court's subject matter jurisdiction, the NBA's motion is governed by Rule 12(b)(1), F.R.Civ.P.

Under Rule 12(b)(1), the Court is permitted to consider information beyond the allegations of the complaint, and in doing so, the Court ordinarily does not convert the motion to dismiss to a motion for summary judgment governed by Rule 56, F.R.Civ.P. However, "[w]hen subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case," United States ex rel. Sikkenga v. Regence Bluecross Blueshield, 472 F.3d 702, 717 (10th Cir. 2006), in that instance, "the jurisdictional question is intertwined with the merits of . . . [the] case, id., and the Court should decide the motion under either Rule 12(b)(6), F.R.Civ.P., or Rule 56, supra. Id. (citation omitted).

---

[5]This section also expressly grants jurisdiction in ERISA cases if such actions are commenced by the Secretary of Labor, plan beneficiaries or plan fiduciaries. 29 U.S.C. § 1132(e)(1). In their complaint, the plaintiffs labeled themselves "beneficiaries." Complaint at ¶ 8. "The term 'beneficiary' means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." Id. § 1002(8). The plaintiffs have more appropriately suggested in their response that they are "participants." E.g., id. § 1002(7)(term "participant" defined as "any employee or former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan").

In the instant case, the Court has considered only those evidentiary materials, the authenticity of which was not disputed, to which the plaintiffs referred in their complaint and/or which are central to the plaintiffs' claims. The Court therefore is not required to convert the instant Motion to Dismiss to a motion for summary judgment.[6] E.g., Jacobsen v. Deseret Book Co., 287 F.3d 936 (10th Cir. 2002).

The Court has instead considered the parties' arguments and authorities under Rule 12(b)(6), and in doing so, must determine "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955, 1974 (2007)).[7] The Court must "assume the truth of the plaintiff[s'] well-pleaded factual allegations and view them in the light most favorable to the plaintiff[s]." Id. (citation omitted). To survive a request for dismissal, "the complaint must give the [C]ourt reason to believe that the[se] plaintiff[s] ha[ve] a reasonable likelihood of mustering factual support for [their] . . . claims." Id. (emphasis deleted).

---

[6]Accordingly, the Court DENIES the plaintiffs' request under Rule 56(f), F.R.Civ.P., that they be permitted to engage in discovery prior to consideration of the defendants' Motion to Dismiss.

[7]In addressing motions filed under Rule 12(b)(6), the Tenth Circuit in light of a recent decision by the United States Supreme Court, Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955 (2007), now looks to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief. "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." Id. at 1965 (citation omitted).

5

To defeat the defendants' argument that they lack standing to sue as "plan participants" of the NBA plans, the plaintiffs as former employees must show that they "'have . . . a reasonable expectation of returning to covered employment' or . . . a 'colorable claim' to vested benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989)(citation omitted); e.g., Felix, 387 F.3d at 1161-63.

The plaintiffs have not alleged that they have a reasonable expectation of re-employment; accordingly, their standing is dependent on whether they have a colorable claim that they will prevail in a suit for benefits. A determination of whether a colorable claim has been established arguably permits consideration of the merits at this preliminary stage, e.g., Alexander v. Anheuser-Busch Companies, 990 F.2d 536, 539 (10th Cir. 1993), and as case law teaches, "the language of the plan . . . control[s] . . . ." Id. at 539.

As stated, the NBA plans in this case include a medical plan, a dental plan and a life insurance plan issued by The Guardian. Eligibility for employee coverage under these is limited to "active full-time employees." The accidental death and dismemberment plan that is included in the NBA plans also extends coverage only to "active referees," and services provided under the employee assistance plan are extended only to "all NBA employees."

The Benefits Guide for the NBA plans contains separate and distinct sections, one entitled "If You Retire," and one entitled "If You Become Totally Disabled," and advises referees whose employment with the NBA has ended, that

6

the reason for which their employment is terminated "makes a difference to the way
. . . benefits are handled."

In the latter section, "If You Become Totally Disabled," the Benefits Guide
expressly states that if a referee is "continuously disabled after 12 months, . . . [his]
employment with the NBA will be formally terminated."  It advises that at that time,
the medical plan "will continue to cover expenses related to . . . [the] disability for
a year, at no cost . . . ."  Accidental death and dismemberment "coverage ends after
. . . [a referee] ha[s] been disabled for twelve (12) months," and a disabled referee's
access to the services provided under the employee assistance plan ends when the
referee "terminates . . . [his] employment because of disability."  The life insurance
plan itself dictates that coverage under that plan "ends on the date . . . active full-
time service ends for any reason[,] . . . includ[ing] disability . . . and the end of
employment," but further provides that coverage may be "extended . . . for one year
. . . at no cost."

The plaintiffs' active full-time employment with the NBA was terminated
when, because of their disabilities, they were unable to regularly work at least 30
hours per week for more than twelve (12) months.  Once their employment was
terminated, they were only entitled to benefits under the NBA plans for a maximum
of twelve (12) months.

The Court finds the plaintiffs have failed to allege sufficient facts to state
claims for relief under ERISA that are plausible on their face and that show a
"colorable claim" to vested benefits.  Accordingly, the plaintiffs do not qualify as

7

"plan participants" with standing to seek relief under ERISA, and this Court lacks subject matter jurisdiction over this matter. The complaint therefore should be dismissed.[8]

To circumvent this conclusion, the plaintiffs have argued that the terms of the collective bargaining agreements ("CBA") between the NBA and the National Basketball Referees Association are incorporated in, and should be included as part of, the NBA plans and that they have a "colorable claim" to benefits under the CBAs.

The first CBA ("1995 CBA"), which the plaintiffs have contended pertains to Mayfield and Middleton, was in effect from 1995 to 1999. The second CBA ("1999 CBA"),which the plaintiffs have contended pertains to Mathis and Durham, was effect from 1999 to 2004, and it was the CBA in effect when the plaintiffs' benefits were terminated.

The defendants have not disputed that the CBAs and the NBA plans should be read together. They have argued however that the plaintiffs are not entitled to any benefits under the CBAs to which they are not entitled under the NBA plans as a whole, including the CBAs, and that the plaintiff have confused those benefits to

---

[8]To the extent, if any, the plaintiffs have sought relief under subsections 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), the Court finds that these subsections cannot support any claim of entitlement to benefits. The former subsection is unavailable to obtain individual benefit coverage. E.g., Massachusetts Mutual Life Insurance Co. v. Russell, 473 U.S. 134 (1985)(section 502(a)(2) protects plan, not rights of individual participants). The latter subsection, 502(a)(3), which permits a plan participant to obtain injunctive or "other appropriate equitable relief," is equally unavailable under the circumstances of this case. E.g., Great-West Life & Annuity Insurance Company v. Knudson, 534 U.S. 204 (2002)(equitable restitution damages available but limited to situations where money can be traced to particular funds in defendant's possession); Varity Corp. v. Howe, 516 U.S. 489 (1996).

which non-disabled retirees are entitled and those benefits to which disabled

retirees are entitled.

The CBAs not only expressly incorporate the NBA plans by reference, but

also expressly state that the terms of the NBA plans govern a referee's entitlement

to benefits. For example, the summary of medical benefits applicable to the 1999

CBA[9] makes clear that the medical plan governs coverage by its language:

> "This is intended only as a general summary of benefits. A more
> complete description of benefits and the terms under which they are
> provided, including limitations and exclusions, are contained in the
> Group Certificate Booklet PPO94NY."

Furthermore, the provisions of the CBAs are consistent with those of the NBA

plans, and the CBAs make a distinction between referees whose employment is

terminated because of disability and non-disabled referees who retire. For example,

the 1999 CBA expressly provides that

> "[n]o benefits . . . shall be paid by the NBA to a referee who has at
> any time received disability benefit payments under the disability
> insurance policy provided pursuant to Section 3 of Article VI, unless,
> subsequent to the date on which the referee receives the last
> disability benefit payment under such disability policy, such referee is
> credited with at least two 'Years of Referee Service' as such term is
> defined under Section 1.34 of the Restated National Basketball
> Association Referee's Pension Plan."

The plaintiffs' reliance upon the provisions of the CBAs, which are

incorporated in and consistent with the NBA plans, does not revive their ERISA

claims. Accordingly, the Court finds that the plaintiffs have failed to show a

---

[9]See 1999 CBA ("NBA shall pay the premiums for life insurance coverage . . . to provide maximum benefits (in accordance with the terms of the applicable policy or policies")); see also 1995 CBA Art. VI, §§ 2, 5.

"colorable claim" to benefits and that dismissal of the plaintiffs' ERISA claims is therefore warranted because the plaintiffs do not qualify as "plan participants" with standing to seek relief under ERISA.

The plaintiffs have contended in their response that the phrase "breach of contract" set forth in their complaint refers to an independent claim for breach of the CBAs and that they seek relief for the defendants' decision to "unilaterally sever[] the . . . [plaintiffs'] benefits," Complaint at 3, ¶ 12, under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. In support of this cause of action, the plaintiffs have relied upon the same provisions in the CBAs to support their claim for benefits.

To survive the defendants' request for dismissal of this breach of contract claim, "the complaint must give the [C]ourt reason to believe that the plaintiff[s] ha[ve] a reasonable likelihood of mustering factual support for [their] claims." Ridge at Red Hawk, 493 F.3d at 1177. After "assum[ing] the truth of the plaintiff[s'] well-pleaded factual allegations and view[ing] them in the light most favorable to the plaintiff[s]," id. (citation omitted), the Court again finds that "the complaint [does not] contain[] 'enough facts to state a claim to relief that is plausible on its face.'"  Id. (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007)). Because the plaintiffs' "[f]actual allegations . . . [in their complaint are not]  enough to raise a right to relief above the speculative level," Bell Atlantic, 127 S.Ct. at 1965 (citation omitted), the Court finds the plaintiffs' breach of contract claim under section 185 should likewise be dismissed.

10

Accordingly, the Court

(1) GRANTS the defendants' Motion to Dismiss filed on May 9, 2007;

(2) deems MOOT the defendants' Motion to Transfer Venue filed on May 9, 2007, wherein the defendants have argued in the alternative that this matter should be transferred to the Southern District of New York pursuant to section 1404(a); and

(3) DISMISSES this matter against the instant movants;[10] and

(4) in the absence of any allegations asserted against them in the complaint, DISMISSES from this action all other defendants as well.

ENTERED this 3rd day of October, 2007.

LEE R. WEST
UNITED STATES DISTRICT JUDGE

---

[10]Because the defendants have never answered, the plaintiffs had an absolute right under Rule 15, F.R.Civ.P., to amend their complaint and did not need permission from this Court. The plaintiffs did not exercise that right, and to that extent, any request to amend at this date is moot.

To the extent the plaintiffs have sought leave to amend, see Plaintiffs' Response at 28-29 ("Plaintiffs also hereby move . . . for leave to amend the Complaint . . . should the Court find the complaint insufficient"), the Court DENIES such request. E.g., Calderon v. Kansas Department of Social and Rehabilitation Services, 181 F.3d 1180, 1187 (10th Cir. 1999)(single sentence, lacking statement of grounds for amendment and dangling at end of memorandum, does not rise to level of a motion for leave to amend).